# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>The premises located at 15935 Meadowside Street, La Puente, California, 91744-1654 (the "SUBJECT PREMISES"), as described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 2:21-mj-2443 |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 18 U.S.C. § 1030 | Computer Fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

/s/ *Anthony Bossone*
_____
*Applicant's signature*

FBI Task Force Officer Anthony Bossone
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

City and state: <u>Los Angeles, CA</u>

_____
*Judge's signature*

Hon. Margo A. Rocconi, US Magistrate Judge
_____
*Printed name and title*

AUSA: Aaron Frumkin – 213-590-8180

**ATTACHMENT A**

**PREMISES TO BE SEARCHED**

The SUBJECT PREMISES is located at 15935 Meadowside Street, La Puente, California 91744-1654.  The SUBJECT PREMISES is a one-story, single family residential structure with a cream-colored stucco exterior and gray shingle roof.  The front entry door of the residence faces South.  The premises has a detached garage structure with a light blue-colored exterior and gray shingle roof.  The front of the premises is bordered by a scalloped, block wall with red tiles lining the top of the wall.  Beyond the front wall is a mailbox bearing the numbers "15935" and the numbers "15935" are painted on the curbing just below the mailbox.  The warrant extends to the entirety of the SUBJECT PREMISES, including the residence, all rooms, attics, basements, garages, storage areas, safes, containers, trash areas, trash containers, and surrounding areas, and to all buildings, structures, vehicles, and appurtenances on the curtilage of the SUBJECT PREMISES.

**ATTACHMENT B**

I.   **ITEMS TO BE SEIZED**

    1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1030(a)(2)(C) (computer fraud), and 18 U.S.C. § 1028A(a)(1) (aggravated identity theft), namely:

        a.   Any and all records, notes, documents, and materials related to celebrities and individuals not obviously affiliated with the SUBJECT PREMISES, to include, but not limited to, Victim #1.  Such records include personally identifying information, such as date of birth and social security number; contact information, such as addresses, telephone numbers, email addresses, or online accounts; photographs in any format; and videos in any format.

        b.   For the period from September 1, 2014, through the present, any and all records, documents, images, logs, programs, applications, and materials related to email and iCloud accounts accessed from the SUBJECT PREMISES.

        c.   For the period from September 1, 2014, to the present, any and all records, documents, images, logs, programs, applications, and materials related to "phishing," password resetting, hacking of email, iCloud or other online accounts, or e-mail forwarding, including, but not limited to, access to the following accounts: davidchi205@gmail.com; applebackupicloud@gmail.com; and backupagenticloud@gmail.com.

        d.   For the period from September 1, 2014, to the present, any and all records, documents, images, logs, programs,

i

applications, and materials related to the sharing, distribution, posting or selling of personally identifying information, contact information, photographs or videos of celebrities or other individuals not affiliated with the SUBJECT PREMISES.

e.    Any digital device used to facilitate the above listed violations (and forensic copies thereof).

f.    With respect to any digital device used to facilitate the above-listed violations or containing evidence falling within the scope of the foregoing categories of items to be seized:

i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.    evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii.    evidence of the attachment of other devices; evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

iv.    evidence of the times the device was used;

           v.     passwords, encryption keys, and other access
devices that may be necessary to access the device;

           vi.    applications, utility programs, compilers,
interpreters, or other software, as well as documentation and
manuals, that may be necessary to access the device or to
conduct a forensic examination of it;

           vii.   records of or information about Internet
Protocol addresses used by the device;

           viii.  records of or information about the device's
Internet activity, including firewall logs, caches, browser
history and cookies, "bookmarked" or "favorite" web pages,
search terms that the user entered into any Internet search
engine, and records of user-typed web addresses.

     2.   As used herein, the terms "records," "documents,"
"programs," "applications," and "materials" include records,
documents, programs, applications, and materials created,
modified, or stored in any form, including in digital form on
any digital device and any forensic copies thereof.

     3.   As used herein, the term "digital device" includes any
electronic system or device capable of storing or processing
data in digital form, including cent al processing units;
desktop, laptop, notebook, and tablet computers; personal
digital assistants; wireless communication devices, such as
telephone paging devices, beepers, mobile telephones, and smart
phones; digital cameras; peripheral input/output devices, such
as keyboards, printers, scanners, plotters, monitors, and drives
intended for removable media; related communications devices,

such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

**II.   SEARCH PROCEDURE FOR DIGITAL DEVICES**

4.   In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant. The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

b.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized. The search team may also search for and

attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

      ii.    The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

      c.    The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

      d.    If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

      e.    If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data and may access such data at any time.

      f.    If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

      g.    The government may also retain a digital device if the government, prior to the end of the search period,

obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

h.     After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.     The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6.     In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a.     Any digital device capable of being used to commit, further, or store evidence of the Subject Offenses listed above;

b.     Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.    Any magnetic, electronic, or optical storage device capable of storing digital data;

d.    Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e.    Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.    Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.    Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

7.    During the execution of this search warrant, law enforcement is permitted to: (1) depress the thumb and/or fingers of HAO KUO CHI onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of HAO KUO CHI'S face with HAO KUO CHI's eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.

8.    The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not

apply to any search of digital devices pursuant to any other
court order.

**AFFIDAVIT**

I, Anthony Bossone, being duly sworn, declare and state as follows:

### I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of an application for a warrant to search 15935 Meadowside Street, La Puente, California 91744-1654 (the "SUBJECT PREMISES") as described more fully in Attachment A.

2.   The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1030(a)(2)(C) (computer fraud), and 18 U.S.C. § 1028A(a)(1) (aggravated identity theft) (collectively, the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II.   BACKGROUND OF AFFIANT

4.   I am a Task Force Officer with the Federal Bureau of Investigation ("FBI") in the Tampa Field Office, and I have been

1

so employed since January 2015.  From October 2018 to present, I
have been assigned to the FBI's Cyber Crime Task Force.  In this
capacity, I investigate a variety of crimes, including computer
fraud and abuse.  I have also served as a Detective with the
Pasco County Sheriff's Office Cyber Investigations Unit since
April 2013.  I have completed training in network intrusion
investigative techniques and computer forensic techniques.  I
have a Master of Science degree in Cybersecurity from Saint Leo
University.  I am a Certified Forensic Computer Examiner by the
International Association of Computer Investigative Specialists.
I have been involved in numerous investigations involving
unauthorized access of computer systems and cases involving
electronic evidence.

## V. <u>SUMMARY OF PROBABLE CAUSE</u>

5.    In or around March 2018, a public figure residing in
Tampa, Florida ("Victim #1") reported that nude photos of Victim
#1 had been posted on pornographic websites without Victim #1's
knowledge or permission.  Investigation revealed that Victim
#1's Apple iCloud account was hacked by an IP address at the
SUBJECT PREMISES registered to Hao Kuo Chi ("CHI").  Further
investigation of several email accounts and two IP addresses
used by CHI revealed that CHI has hacked thousands of Apple
iCloud accounts by posing as a customer support representative
for Apple and convincing unsuspecting victims to change their
iCloud credentials and provide them to CHI.  CHI has obtained
and collected approximately 620,000 photos and 9,000 videos of
at least 306 identified victims.  DMV records indicate that CHI

currently resides at the SUBJECT PREMISES, and on April 29,
2021, CHI was observed at the SUBJECT PREMISES.

## VI. STATEMENT OF PROBABLE CAUSE

6.     Based on my training and experience, my knowledge of
this investigation, including my conversations with victims and
witnesses, and review of photographs, witness statements, and my
conversations with other law enforcement agents and officers, I
know the following:

**A.     Case Background**

9.     In or around March 2018, a California-based company
that specializes in removing celebrity photos from the Internet
contacted a public figure residing in Tampa, Florida ("Victim
#1"), and advised that nude photos of Victim #1 had been posted
on pornographic websites.  Around that same time, Victim #1's
employer began an independent investigation of this incident,
and it discovered a September 2017 social media post wherein two
residential addresses associated with Victim #1 had been
published online.

10.     During an interview with investigators, Victim #1
confirmed that Victim #1 was the person depicted in the photos
posted on the pornographic websites, and that Victim #1 had once
resided at each of the two addresses posted on social media.
Victim #1 denied knowing about or consenting to the posting of
any of this information online.  Victim #1 said that during the
relevant period, Victim #1 had an Apple iPhone and used Apple
iCloud to back up photos and other information.  Victim #1
further said that the nude photos and photos containing prior

3

addresses were stored on Victim #1's iPhone and backed up to Victim #1's iCloud.  Accordingly, anyone with access to Victim #1's iCloud account could have also accessed this information.

11.  Investigators learned from Charter Communications that an IP address not belonging to Victim #1 – IP address 172.119.90.40 – had attempted to log into Victim #1's iCloud account on May 6, 2018.  Investigators further learned that, during that timeframe, IP address 172.119.90.40 was registered to "Lien Hang" at the SUBJECT PREMISES.  Records from the California Department of Motor Vehicles reflect that Hao Kuo Chi ("CHI") and Lingh My Ha Chi both reside at the SUBJECT PREMISES. According to records provided by Apple, IP address 172.119.90.40 not only accessed Victim's #1's iCloud account on May 6, 2018, but also successfully accessed 47 additional iCloud accounts on that same day.  The records indicate that the true owners of those iCloud accounts had resided in states across the country, including Arizona, California, Connecticut, Louisiana, Massachusetts, Ohio, Pennsylvania, South Carolina, and Texas.

12.  Through open sources and law-enforcement databases, investigators determined that CHI had a Facebook account under the name of "david.chi16."  According to Facebook, that account was associated with email address davidchi205@gmail.com and phone number (626) 537-5061.

**B.   Identification of CHI and the SUBJECT PREMISES**

13.  On September 10, 2019, the Honorable Sean P. Flynn, United States Magistrate Judge for the Middle District of Florida signed a search warrant in Case No. 8:19-MJ-2189SPF for

4

the davidchi205@gmail.com Google account.  The contents of the Google account confirmed its use by CHI, including photos of his U.S. passport and California Driver's License, which listed the SUBJECT PREMISES as his address.  The contents of the Google account also contained emails from both FedEx and Amazon.com, identifying the customer as CHI with the address of the SUBJECT PREMISES.

14.  According to Google, davidchi205@gmail.com was linked by browser cookies to email accounts applebackupicloud@gmail.com and backupagenticloud@gmail.com.  Subscriber records provided additional proof that all three accounts were controlled and used by CHI, based on the listed IP addresses and phone numbers. IP address 172.119.90.40 (which was used to hack Victim #1 and registered to the SUBJECT PREMISES) had been used to access both the davidchi205@gmail.com and backupagenticloud@gmail.com accounts.

15.  Records revealed that an additional IP address, IP address 66.215.83.178, had also been used to access all three accounts.  According to Charter Communications, during the relevant timeframe, IP address 66.215.83.178 was registered to "BETA SECURITY" in Temple City, California.  Based on emails contained in the davidchi205@gmail.com account, investigators are aware that Beta Security is CHI's place of employment. Additionally, phone number (626) 537-5061 (the same phone number linked to CHI's Facebook account) is listed for both the davidchi205@gmail.com and applebackupicloud@gmail.com accounts. According to T-Mobile, that phone number is registered to CHI.

16.   On September 10, 2019, the Honorable Sean P. Flynn, United States Magistrate Judge for the Middle District of Florida also signed search warrants in Case No. 8:19-MJ-2189SPF for the applebackupicloud@gmail.com and backupagenticloud@gmail.com Google accounts.  In total, there were more than 500,000 emails in those accounts.  The search warrant results revealed that CHI had used those accounts extensively in furtherance of criminal conduct.  Specifically, CHI used these accounts to acquire and share nude photos and videos of young women, including Victim #1.  One of the ways that CHI gained unauthorized access to his victims' iCloud accounts was by posing as a customer support representative for Apple, and tricking the true owner of the account to change his or her credentials, prompting the unsuspecting victim to then email that information directly to CHI.  Between September 4, 2014, and September 8, 2016, approximately 4,700 emails containing what investigators believe to be iCloud user IDs (i.e., email addresses) and passwords were sent to applebackupicloud@gmail.com and backupagenticloud@gmail.com.

17.   Additionally, CHI used applebackupicloud@gmail.com and backupagenticloud@gmail.com to communicate with others about gaining and attempting to gain unauthorized access to protected iCloud accounts (i.e., hacking) and stealing data, which he referred to as "rips."  Of particular interest to CHI were nude photos and videos of the iCloud account owners, which he referred to as "wins."  A keyword search of the email accounts

revealed more than 1,000 email exchanges including the word "wins."

18.   The applebackupicloud@gmail.com and backupagenticloud@gmail.com Google accounts contained hundreds of emails wherein a conspirator would request that CHI hack a certain iCloud account, and CHI would respond by forwarding the conspirator a Dropbox link.  These emails reveal that CHI regularly used Dropbox to store content stolen from the hacked iCloud accounts.  Based in part on this information, on December 19, 2019, the Honorable Amanda A. Sansone, United States Magistrate Judge for the Middle District of Florida, signed a search warrant in Case No. 8:19-MJ-2606AAS for all Dropbox accounts associated with email addresses davidchi205@gmail.com, applebackupicloud@gmail.com, and backupagenticloud@gmail.com.

19.   The Dropbox search warrant results revealed a paid Dropbox account associated with email address backupagenticloud@gmail.com.  This Dropbox account was associated with CHI's known phone number ((626) 537-5061) and IP addresses (172.119.90.40 and 66.215.83.178).  CHI's Dropbox account contained approximately 620,000 photos and 9,000 videos of at least 306 identified victims.  CHI had organized the content in the Dropbox account by email address, and further by whether the content contained a "win."

20.   On April 29, 2021, at approximately 8:08 AM PDT, investigators observed CHI exit the SUBJECT PREMISES and enter a dark, charcoal colored Hyundai Genesis sedan bearing California license plate 8ETG799.  This vehicle is registered to CHI at the

SUBJECT PREMISES.  DMV records reveal that CHI has been issued a
valid California driver's license, number D1162194, with the
listed address matching that of the SUBJECT PREMISES.

**C.   Use of the SUBJECT PREMISES in Connection with the Scheme**

21.  Through my training and experience, I am aware that
most individuals safeguard their personal electronic devices and
typically maintain these devices near their person and within
their residence.

22.  I am aware that collectors of non-consensual
pornographic images, like CHI, rarely, if ever, dispose of their
materials, and may go to great lengths to conceal and protect
their collections of these materials from discovery, theft, and
damage.  The desire of such individuals to retain pornography,
together with the sense of security afforded by using computers,
provides probable cause to believe that computer images will be
retained by the collector indefinitely.  For example, based upon
a review of CHI's Dropbox account, it appears that CHI
maintained most, if not all, of the photos and videos he had
stolen from his victims' iCloud accounts.  Likewise, CHI had
maintained extensive lists of iCloud usernames and passwords,
some dating as far back as September 2014.  Collectors of non-
consensual pornographic images may protect their illicit
materials by passwords, encryption, and other security measures,
save them on movable media such as CDs, DVDs, flash memory,
thumb drives, and removable hard drives (which can be as small
as a postage stamp and easily hidden), or send them to third
party image storage sites via the Internet.

23.   This investigation has revealed that CHI communicates with others and accesses various online services in furtherance of the scheme via their cellular phones, computers, and/or mobile devices.  As discussed above, records from Google and Dropbox indicate that some of these accounts were accessed from the SUBJECT PREMISES.

24.   Accordingly, there is probable cause to believe that evidence of CHI's violations of the Subject Offenses will be found on his phones, and on any other electronic devices in his possession, including laptops, computers, smart watches, and wearable electronic devices, which are likely stored inside the SUBJECT PREMISES.

### VII. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

25.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally,

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.   Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

10

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

26.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above. Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b.    Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

11

27.   The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.   Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

28.   Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress CHI's thumbs and/or fingers on the

12

device(s); and (2) hold the device(s) in front of CHI's face with CHI's eyes open to activate the facial-, iris-, and/or retina-recognition feature.

## VIII. <u>CONCLUSION</u>

29.  For all the reasons described above, there is probable cause to believe that the items to be seized described in Attachment B will be found in a search of the SUBJECT PREMISES described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ___ day of
May, 2021.


_____
HONORABLE MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

13